[No. C051100. Third Dist. Mar. 29, 2006.]

CALIFORNIANS FOR FAIR REPRESENTATION—NO ON 77 et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
ARNOLD SCHWARZENEGGER, as Governor, etc., et al., Real Parties in Interest.

16

---

**Counsel**

Olson, Hagel & Fishburn, Deborah B. Caplan, Lance H. Olson and Richard C. Miadich for Petitioners.

No appearance for Respondent.

Bell, McAndrews & Hiltachk, Charles H. Bell, Thomas W. Hiltachk and Jimmie E. Johnson for Real Parties in Interest.

---

**Opinion**

**BUTZ, J.**—Just prior to the special election of November 8, 2005, petitioners Californians for Fair Representation—No on 77 (hereafter CFR—No on 77) and Theresa Faye Jang-Hefner (collectively, petitioners) petitioned this court for a peremptory writ of mandate, prohibition or other extraordinary relief. They sought to compel respondent the Superior Court of Sacramento

County to vacate its order denying a temporary restraining order and preliminary injunction to require real parties in interest, Governor Arnold Schwarzenegger, Governor Schwarzenegger's California Recovery Team (hereafter CRT), Redistrict California—Yes on 77 (hereafter Redistrict—Yes on 77) and Steve Poizner (collectively, real parties in interest), to comply with 24-hour disclosure requirements for contributions and independent expenditures imposed by the Political Reform Act of 1974 (PRA) (Gov. Code, § 81000 et seq.).[1]

After real parties in interest voluntarily complied with the disclosure requirements, this court issued an alternative writ of mandate on November 4, 2005, but denied the request for immediate relief as moot. Petitioners contend real parties in interest's initial refusal to report as contributions or independent expenditures the million of dollars spent on radio and television advertising in support of Propositions 74, 75, 76 and 77 violated the PRA. Real parties in interest contend the case is moot because the reports have been filed and the issue is not one likely to evade review. Further, they contend there was no basis for a preliminary injunction as there was no irreparable injury and petitioners had no likelihood of prevailing on the merits.

We conclude that although the issue is technically moot, we shall exercise our discretion to decide it because it is an important issue of public interest, likely to recur and evade appellate review. We further conclude that the expenditures admittedly made by CRT meet the statutory definition of independent expenditures and should have been reported on a 24-hour basis during the 90 days before the election.

## FACTUAL AND PROCEDURAL BACKGROUND

Many of the parties in this case are committees as defined by the PRA, so we begin by identifying the various types of committees. A committee is one or more persons who directly or indirectly receives contributions of $1,000 or more in a calendar year, makes independent expenditures of $1,000 or more in a calendar year, or makes contributions of $10,000 or more in a calendar year to or at the behest of candidates or committees. (§ 82013.) A controlled committee is a committee controlled directly or indirectly by a candidate or state measure proponent. (§ 82016, subd. (a).) A candidate or state measure proponent controls a committee if he or she has a significant influence on the actions or decisions of the committee. (*Ibid.*)

---

[1] Undesignated statutory references are to the Government Code.

Committees are divided into two groups based on the purpose for which the committee is formed. A "primarily formed" committee is formed or exists to support or oppose one or more candidates or one or more measures being voted upon in the same election. (§ 82047.5.) A general purpose committee generally is formed or exists to support or oppose candidates or measures in several different elections. (§ 82027.5, subd. (a).)

Petitioner CFR—No on 77 is a committee primarily formed to *oppose* Proposition 77 in the November 2005 special election.[2] Petitioner Theresa Faye Jang-Hefner is a registered California voter.

Real party in interest Arnold Schwarzenegger is the Governor of California and a candidate for reelection to that office; he controls real party in interest CRT, a general purpose committee. Real party in interest Redistrict—Yes on 77 is a committee primarily formed to *support* Proposition 77 and is controlled by real party in interest Steve Poizner, a candidate for State Insurance Commissioner.

On October 7, 2005, petitioners filed a complaint for temporary and permanent injunction against real parties in interest, challenging the legality of contributions totaling $1,750,000 made by Governor Schwarzenegger and CRT to Redistrict—Yes on 77. They also filed an ex parte application for a temporary restraining order.

In a preliminary opposition, real parties in interest argued there was no harm justifying an injunction because the contributions had been returned. They further argued that any limitation on the amount an individual could contribute to a ballot measure committee was unconstitutional.

At a hearing on the application for a temporary restraining order, real parties in interest provided documentation that the contributions at issue had been refunded. In response to petitioners' argument that CRT had made in-kind contributions to Redistrict—Yes on 77, the treasurer of CRT declared that CRT made expenditures in support of Proposition 77, but that these expenditures were not "at the behest of" Redistrict—Yes on 77 or Poizner. The trial court denied the application for a temporary restraining order.

---

[2] Proposition 77 failed to pass. (See Ballot Pamp., Spec. Elec. (Nov. 8, 2005) p. 32 et seq. at <http://www.ss.ca.gov/ elections/vig_2005.htm> [as of Mar. 29, 2006] [Prop. 77: "Redistricting. Initiative Constitutional Amendment"] and Secretary of State Bruce McPherson's certified election results for Prop. 77 (Dec. 15, 2005) Supp. to the Statement of Vote, *Statewide Measures: Statewide Summary*, p. 1 at <http://www.ss.ca.gov/elections/elections_elections.htm> [as of Mar. 29, 2006].)

Petitioners then turned their sights on the millions of dollars CRT had spent on radio and television advertising in support of Propositions 74, 75, 76 and 77. They asserted these expenditures were "at the behest" of Redistrict—Yes on 77 and therefore should have been reported as contributions to Redistrict—Yes on 77. In support of their argument, petitioners pointed to the connections between Redistrict—Yes on 77 and the Governor. The full legal name of Redistrict—Yes on 77 included "with major funding provided by Arnold Schwarzenegger and Steve Poizner for Insurance Commissioner." Governor Schwarzenegger publicly announced that Poizner would head the Yes on Proposition 77 campaign. Governor Schwarzenegger and Poizner engaged in joint fundraising for Redistrict—Yes on 77.

Petitioners argued the expenditures for advertising were either contributions to Redistrict—Yes on 77 or, if not made "at the behest" of Redistrict—Yes on 77, independent expenditures. In either case, the sums had to be publicly reported on a 24-hour basis in the final weeks before the election. Neither CRT nor Redistrict—Yes on 77 had reported the sums and were therefore in violation of the PRA.

Real parties in interest argued petitioners had no evidence that the expenditures for advertising in support of Proposition 77 were made "at the behest" of Redistrict—Yes on 77, so there were no illegal contributions and the motion for a preliminary injunction had to be denied.

Petitioners then filed a first amended complaint for temporary and permanent injunction. They alleged CRT had made expenditures in excess of $700,000 in support of Proposition 77 and that these expenditures were in-kind contributions to Redistrict—Yes on 77. They sought to enjoin these excessive and illegal contributions and to require Redistrict—Yes on 77 to report these contributions on a 24-hour basis as required by the PRA. Alternatively, if the expenditures were not contributions to Redistrict—Yes on 77, they were independent expenditures by CRT, and CRT was required to report them on a 24-hour basis under the PRA.

Once again, petitioners sought a temporary restraining order. They sought to enjoin real parties in interest from refusing and failing to comply with the disclosure requirements of the PRA.

The trial court denied the second application for a temporary restraining order. By stipulation of the parties, the ruling also resulted in denial of the request for a preliminary injunction. The issue remaining before the court was whether CRT was required to report expenditures on a 24-hour basis pursuant to the PRA. The trial court found the law "less than clear as to the precise reporting requirements that apply to the expenditures at issue." However,

even if petitioners were correct as to the reporting requirements, there was no irreparable harm. The public had abundant information about the source and amount of money being used to support the propositions and knew the Governor was the major proponent of and the major donor to Proposition 77.

Just days before the November 8, 2005 special election, petitioners petitioned this court for extraordinary relief to compel real parties in interest to comply with the 24-hour disclosure requirements of the PRA. A few days later, real parties in interest submitted an opposition, reporting that CRT had begun voluntarily filing electronic reporting of its expenditures in support of Propositions 74, 75, 76 and 77, and would continue to do so on a daily basis until the election. This court denied the request for immediate relief as moot, but issued an alternative writ of mandate.

## DISCUSSION

### I. Mootness

In their petition, petitioners urge that even if their request for immediate relief is denied, this court should issue an alternative writ and schedule the matter for hearing so the disclosure issues can be resolved before the next election.

Real parties in interest contend this case is now moot because they voluntarily made the disclosures that petitioners sought. They further contend that the issue is not one that is likely to evade review. Since the reports at issue have to be filed on a 24-hour basis for the 90 days preceding an election, they contend a challenger has 90 days to file suit and the issue could be resolved before the election.

■ "If an action involves a matter of continuing public interest and the issue is likely to recur, a court may exercise an inherent discretion to resolve that issue, even though an event occurring during its pendency would normally render the matter moot." (*Liberty Mut. Ins. Co. v. Fales* (1973) 8 Cal.3d 712, 715–716 [106 Cal.Rptr. 21, 505 P.2d 213]; see *Baluyut v. Superior Court* (1996) 12 Cal.4th 826, 829–830, fn. 4 [50 Cal.Rptr.2d 101, 911 P.2d 1] [applying exception to a petition for writ of mandate].) ■ The purity of elections and the full disclosure of all contributions and expenditures are matters of public interest. (*Johnson v. Bradley* (1992) 4 Cal.4th 389, 409 [14 Cal.Rptr.2d 470, 841 P.2d 990].)

■ Furthermore, courts will decide otherwise moot issues that involve matters of public interest and are likely to recur while evading appellate review. (*People v. Cheek* (2001) 25 Cal.4th 894, 897–898 [108 Cal.Rptr.2d

181, 24 P.3d 1204]; *Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 122 [105 Cal.Rptr.2d 46, 18 P.3d 1198].) In *Cheek,* the California Supreme Court addressed an issue relating to an initial two-year commitment under the Sexually Violent Predators Act (Welf. & Inst. Code, § 6600 et seq.), although that commitment had expired while the appeal was pending. (*Cheek, supra,* at p. 897.) Here the applicable timeframe is considerably shorter; the issue must be raised and resolved, including appellate review, in less than 90 days or it becomes moot. This short timeframe brings this case within the recognized exception to the mootness doctrine.

## II.  Disclosure Requirements

■ The PRA requires all committees to file periodic reports of contributions and expenditures. (§ 84200 et seq.) Committees must file semiannual reports by July 31 for the period ending June 30 and by January 31 for the period ending December 31, if they made contributions or independent expenditures. (§ 84200, subd. (b).) Certain preelection reports are also required. (§§ 84200.5, 84200.6, 84200.8.)

Additional reports are required during an "election cycle." An election cycle is the period beginning 90 days before the election and ending on the date of the election. (§ 85204.) A committee primarily formed to support or oppose a ballot measure, such as either CFR—No on 77 or Redistrict—Yes on 77, must file a report online or electronically with the Secretary of State disclosing receipt of any contribution of $1,000 or more received during the election cycle. The report must be filed within 24 hours of receipt of the contribution. (§ 85309, subd. (b).)

■ Further, any committee that makes a contribution to a controlled committee or to a committee primarily formed to support or oppose a ballot measure, within the last 16 days before an election, must report the contribution within 24 hours of when it is made. (§§ 82036, subd. (a), 84200.7, subd. (b), 84203.)

Reports are also required for certain expenditures made during an election cycle. Any committee that makes independent expenditures of $1,000 or more during an election cycle in connection with a ballot measure must file a report online or electronically with the Secretary of State. The report must be made within 24 hours of the time the expenditure is made. (§ 85500, subd. (a).)

A contribution includes any payment except to the extent full and adequate consideration is received, unless it is clear from surrounding circumstances that it is not made for political purposes. (§ 82015, subd. (a).) A payment made for the purpose of influencing or attempting to influence the action of voters

for or against the passage of any measure or made to or at the behest of a controlled committee is made for political purposes. (Cal. Code Regs., tit. 2, § 18215, subd. (a)(1) & (2)(B).)

■ An expenditure is a payment, a forgiveness of a loan, a payment of a loan by a third party, or an enforceable promise to make a payment, unless it is clear from surrounding circumstances that it is not made for political purposes. (§ 82025.) Any payment made for purposes of influencing or attempting to influence voters for or against the passage of any measure or made by a controlled committee is a payment for political purposes. (Cal. Code Regs., tit. 2, § 18225, subd. (a)(1) & (2)(B).) An expenditure includes any monetary or nonmonetary payment made by any person that is used for communications which expressly advocate the passage or defeat of a clearly identified ballot measure. (Cal. Code Regs., tit. 2, § 18225, subd. (b).)

An independent expenditure "means an expenditure made by any person in connection with a communication which expressly advocates the election or defeat of a clearly identified candidate or the qualification, passage or defeat of a clearly identified measure, or taken as a whole and in context, unambiguously urges a particular result in an election but which is not made to or at the behest of the affected candidate or committee." (§ 82031.)

CRT admits it spent millions of dollars on advertisements urging support of several measures on the November 2005 special election ballot, including Proposition 77. These payments were indisputably for political purposes. Petitioners contend that if they were made at the behest of Redistrict—Yes on 77, they were contributions to Redistrict—Yes on 77 and Redistrict—Yes on 77 should have reported them within 24 hours of receipt during the election cycle. Further, CRT should have reported the contributions within 24 hours if they were made during the last 16 days before the election. Alternatively, petitioners contend if the payments were not made at the behest of Redistrict—Yes on 77 or any other committee, then they were independent expenditures and CRT was required to report them within 24 hours during the election cycle.

Real parties in interest contend the payments for advertising were neither contributions nor independent expenditures. They argue that no provision of the PRA requires that an expenditure with respect to a ballot measure not made at the behest of a candidate or committee must be reported as an independent expenditure.

■ The PRA, however, defines an independent expenditure (§ 82031) and requires a committee to report within 24 hours all independent expenditures of $1,000 or more made during the election cycle. (§ 85500, subd. (a).) Real

parties in interest concede these expenditures were made in connection with a communication which expressly advocates the passage of clearly identified ballot measures and contend they were not made at the behest of a candidate or committee. Thus, they concede the expenditures meet the statutory definition of an independent expenditure. (§ 82031.) They offer no argument or authority why the expenditures are not independent expenditures, other than the naked declaration that they are not. Their argument is that these expenditures are not independent expenditures and they were not required to disclose them on a 24-hour basis simply because they say so. Unfortunately for real parties in interest, the law says otherwise. Since the expenditures meet the definition in section 82031, they are independent expenditures and CRT was required to report them within 24 hours during the election cycle if they were $1,000 or more. (§ 85500, subd. (a).)

In arguing that they were not required to report these expenditures as independent expenditures, real parties in interest rely on a statement in the Fair Political Practices Commission's (FPPC) 2005 Addendum to Campaign Manuals.[3] The statement appears under the "General Information on When to File Campaign Statements" section and the "Pre[e]lection Statements" subsection where it states in part: "Certain general purpose committees (political action committees), city major donors and city independent expenditure committees may also file pre[]election statements depending upon the amount of contributions or expenditures made in connection with an election."[4] Real parties in interest argue that because the publication used the term "expenditures" rather than "independent expenditures," it shows "that Petitioners' claim lacks merit."

We need not determine the reason for the use of the term "expenditures" rather than "independent expenditures" in the publication. Whatever the reason, it cannot have the effect of negating the express language of sections 82031 and 85500, subdivision (a), which require a committee to report within 24 hours an independent expenditure of $1,000 or more made during an election cycle.

CRT contends it reported the expenditures on preelection reports in September and October 2005 and voluntarily reported contributions received, although not required to do so. It contends the only information not disclosed was the amount spent on media buys, which was primarily of interest only to

---

[3] Real parties in interest's request for judicial notice of this addendum is granted. (See Evid. Code, § 452, subd. (c); see also *Serrano v. Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241].)

[4] FPPC's 2005 Addendum to Campaign Manuals, page 15, at <http://www.fppc.ca.gov/manuals/2005Addendum.pdf> (as of Mar. 29, 2006).

opponents and was available from other sources. CRT ignores that the PRA requires reporting of independent expenditures on a 24-hour basis during an election cycle. CRT is not free to determine when and what information to disclose; it must comply with the PRA. We will not question the rationale for 24-hour reporting; the role of courts is to interpret and apply statutes as written, not to rewrite them or question their wisdom, expediency or policy. (See *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].)

Real parties in interest note there were numerous committees primarily formed to support Proposition 77. They suggest if petitioners are correct about the disclosure requirements, complicated questions about disclosure may arise. Suppose, they hypothesize, CRT made expenditures at the behest of one primarily formed committee, but independent of another, would the expenditure have to be reported as a contribution as to the first primarily formed committee and reported again as an independent expenditure as to the second? Real parties in interest offer an answer: "The answer is, neither the law nor the FPPC, the regulatory agency charged with interpretation of the law, has answered these questions. There is a simple reason for that: The law was not drafted to answer these questions, and the agency has not had the occasion to answer them. Therefore, it is clear that petitioners have not made a compelling case for disclosure as demanded in the immediate petition and underlying motion for preliminary injunction."

This hypothetical scenario is not the one presented here. Real parties in interest claim none of CRT's expenditures were at the behest of any committee, therefore the expenditures meet only the definition of independent expenditures and there is no complication as to the disclosure requirements.

Finally, real parties in interest contend that to the extent Government Code section 85305 and California Code of Regulations, title 2, section 18535 limit the amount that may be contributed to a candidate-controlled committee primarily formed to support or oppose a ballot measure, these provisions are unconstitutional. This issue would arise only if the expenditures CRT made for advertising are found to have been made at the behest of Redistrict—Yes on 77, contrary to the declaration provided by the treasurer of CRT. As real parties in interest concede, this issue is "not directly addressed in the immediate petition." Because the petition concerns only disclosure require- ments and not limitations on the amount of contributions, we need not address the constitutionality of any such limitations. In fact, the constitution- ality of regulations limiting contributions to candidate-controlled ballot mea- sure committees is pending before this court in *Citizens to Save California v. Fair Political Practices Commission*, case No. C049642.

## DISPOSITION

Inasmuch as real parties in interest have already complied with the alternative writ issued by this court, the issuance of a peremptory writ is unnecessary. The alternative writ is discharged and the petition for writ of mandate is denied. Petitioners shall recover their costs. (Cal. Rules of Court, rule 56(*l*).)

Raye, Acting P. J., and Hull, J., concurred.