[No. B209424. Second Dist., Div. Five. Oct. 13, 2009.]

CARSON CITIZENS FOR REFORM et al., Cross-complainants and Respondents, v.
HELEN S. KAWAGOE, as City Clerk, etc., et al., Cross-defendants and Appellants.

358

**COUNSEL**

Aleshire & Wynder, William W. Wynder and Douglas P. Haubert for Cross-defendant and Appellant Helen S. Kawagoe, as City Clerk.

Robert E. Kalunian, Acting County Counsel, James M. Owens, Assistant County Counsel, and Patrice J. Salseda, Deputy County Counsel, for Cross-defendant and Appellant Dean C. Logan, as Registrar-Recorder.

Law Offices of Christopher Sutton and Christopher Sutton for Cross-complainants and Respondents.

**OPINION**

**KRIEGLER, J.**—Proponents of a petition to recall a local mayor disputed the validity of requests by voters to withdraw their signatures from the petition that were filed with the city clerk and honored by the county registrar, because the requests lacked a declaration of a circulator, and in some instances, the voter signed the petition after filing the request. The city clerk filed an action for declaratory relief against the county registrar, naming the recall proponents and the mayor as real parties in interest. The recall proponents filed a cross-complaint for declaratory relief and a writ of mandate. The trial court declared that a request to withdraw a signature under Elections Code sections 103 or 11303[1] must be accompanied by a declaration of circulator as provided in section 104, and is ineffective as to a subsequent signature. The trial court issued a writ of mandate to the city clerk to certify the petition as sufficient. In a subsequent order, the trial court awarded attorney fees to the recall proponents under Code of Civil Procedure section 1021.5 as against the county registrar and the city clerk. The county registrar appeals from the judgment and the order awarding attorney fees, contending that the trial court's interpretation of the statutory requirements for withdrawal of a petition is incorrect. The city clerk appeals from the order awarding attorney fees on other grounds.

We conclude the appeal is moot as to the portion of the judgment issuing the writ of mandate, because the recall election has been held. However, the appeal is not moot as to the declaratory relief provided, because the recall proponents' status as the successful parties for purposes of an award of attorney fees depends on the propriety of the trial court's ruling on the merits. We hold that under the plain language of sections 103 and 11303, a request to withdraw a signature from a recall petition is effective, without regard to whether the voter signs the petition before or after signing the request, as long as the request is filed with the appropriate election official prior to the filing of the petition. We further hold that a voter's request to withdraw his or her signature from a recall petition is not a "petition or paper" that requires the signature of a circulator under section 104. Therefore, the withdrawal requests at issue in this case were valid, and the city clerk's initial certification of the recall petition as insufficient was correct. The recall proponents should not have been found to be successful parties. We reverse the judgment and the order awarding attorney fees as to both the county registrar and the city clerk.

---

[1] All statutory references are to the Elections Code unless otherwise indicated.

## FACTS AND PROCEDURAL BACKGROUND

*Petition to Recall City Mayor*

Carson Citizens for Reform circulated a petition to recall the City of Carson Mayor James L. Dear (the Mayor). The petition required 8,676 valid signatures to be certified as sufficient. City Clerk Helen S. Kawagoe (the Clerk) received 5,842 requests from voters to withdraw their signatures from the petition. Most of the withdrawal requests were from voters who had not signed the petition and did not include the declaration of a circulator. The Clerk's office stamped the date of receipt on the requests. Approximately 100 to 127 voters signed the petition after filing withdrawal requests.

Citizens presented the petition to the Clerk for filing on February 5, 2007. The Clerk determined that the petition contained 12,164 signatures. On February 6, 2007, the Clerk transmitted the petition and the withdrawal requests to the County of Los Angeles Registrar-Recorder Conny B. McCormack (Dean C. Logan's predecessor, referred to collectively and individually as the Registrar) for signature verification.

Of the 5,842 withdrawal requests, only 868 requests were verified to match signatures on the petition. The Registrar withdrew the signatures from the petition regardless of whether the voter had signed the petition before or after signing the withdrawal request. On March 5, 2007, the Registrar notified the Clerk that the signature verification for the recall petition had been completed and 8,590 signatures were verified and sufficient.

The total number of valid signatures was 86 less than the number required to qualify the petition. On March 7, 2007, the Clerk sent a notice to Citizens stating that the number of signatures found sufficient was 8,590 and the number required to qualify a recall for the ballot was 8,676. Accordingly, the Clerk deemed the recall petition to be insufficient and stated that "no action shall be taken on the petition."

After examining the petition and the Registrar's signature verification determinations, Citizens concluded that several signatures were improperly excluded or withdrawn. On April 18, 2007, Citizens sent a list of disputed signatures to the Clerk and requested a final determination. The Clerk submitted the list of disputed signatures to the Registrar for review. The Registrar refused to review the disputed signatures. The Mayor disagreed that there were errors, but argued that if there were errors, neither the Clerk nor

the Registrar could take any further action with regard to the petition once a notice of insufficiency had been issued.

*Legal Proceedings*

On August 3, 2007, the Clerk filed an action for declaratory and injunctive relief against the Registrar. The complaint named Citizens, its president and vice-president, individual proponents of the recall petition, and the Mayor as the real parties in interest. The Clerk sought a declaration of the respective duties of the Clerk and the Registrar to review the disputed signatures and withdrawal requests, and to correct errors in the signature verification process.

On October 3, 2007, Citizens filed a cross-complaint against the Clerk, the Registrar, and the Mayor. Citizens sought a declaration that a signature withdrawal request requires a declaration of circulator under section 104 and a writ of mandate commanding the Clerk and the Registrar to disregard the withdrawal requests lacking a declaration of circulator. In addition, Citizens sought a declaration that section 103 requires a withdrawal request to be signed after the voter signs the petition and a writ of mandate commanding the Clerk and the Registrar to disregard any withdrawal request shown by the Clerk's date stamp to have been signed prior to the signature of that voter on the petition. Citizens requested an award of attorney fees pursuant to Code of Civil Procedure section 1021.5.

The parties agreed that the trial court would initially determine whether a declaration of circulator is required on withdrawal requests and whether a withdrawal request can be used to withdraw a subsequent signature on the petition. A court trial was held on these two issues on May 9, 2008. The parties stipulated that the 868 withdrawal requests at issue did not contain a declaration of circulator, and between 100 and 127 of the withdrawal requests were signed prior to the date the same voter signed the petition. The trial court found that a signature withdrawal request required a declaration of circulator under section 104. In addition, the trial court declared that under section 103, a signature withdrawal request is not valid if the voter signed the withdrawal before he or she signed the recall petition. Therefore, on May 13, 2008, the trial court issued a peremptory writ of mandate ordering the Clerk to rescind the March 7, 2007 notice of insufficiency and to certify the petition to recall the Mayor as sufficient.

Citizens filed a motion for an award of attorney fees under Code of Civil Procedure section 1021.5. A hearing was held on July 10, 2008, and the trial court took the matter under submission. The Registrar filed a notice of appeal

from the May 13, 2008 judgment. In a minute order dated July 14, 2008, the trial court found that Citizens was the prevailing party as against both the Clerk and the Registrar, and awarded attorney fees of $78,897.95. The Clerk and the Registrar each filed timely notices of appeal from the July 14, 2008 order awarding attorney fees.

In response to the trial court's ruling, Assembly Bill No. 2584 (2007–2008 Reg. Sess.) was amended to add language to sections 103, 9602, and 11303, to clarify that withdrawal requests are not a paper or petition requiring a declaration of circulator under section 104. Assembly Bill No. 2584 was passed by the Assembly and the Senate in August 2008. However, Governor Arnold Schwarzenegger returned Assembly Bill No. 2584 without signing it on the ground that he had received higher priority bills at the end of the legislative session that required his attention.

A recall election was held on September 16, 2008, and the Mayor was not recalled.[2] On January 22, 2009, Dean C. Logan was substituted in his official capacity as the Registrar.

## DISCUSSION

*Effect of Election*

We first address whether as a result of the recall election, the Registrar's appeal from the judgment is moot. We conclude that it is not.

■ "A case is moot when any ruling by this court can have no practical impact or provide the parties effectual relief. [Citation.]" (*Woodward Park Homeowners Assn. v. Garreks, Inc.* (2000) 77 Cal.App.4th 880, 888 [92 Cal.Rptr.2d 268].) "[A] matter is considered moot if, as a result of changed circumstances, its determination by declaratory relief will no longer significantly affect the legal relations of the parties. [Citation.]" (*Redwood Coast Watersheds Alliance v. State Bd. of Forestry & Fire Protection* (1999) 70 Cal.App.4th 962, 968 [83 Cal.Rptr.2d 24].) " '[A]n action which originally was based upon a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. A reversal in such a case would be without practical effect, and the appeal will therefore be dismissed.' [Citations.]" (*Environmental Coalition of Orange County, Inc. v. Local Agency Formation Com.* (1980) 110 Cal.App.3d 164, 170 [167 Cal.Rptr. 735].)

---

[2] The Registrar's motion to take judicial notice of the results of the special municipal election held on September 16, 2008, is granted, as is the Registrar's motion for judicial notice dated April 22, 2009.

However, " '[i]f an action involves a matter of continuing public interest and the issue is likely to recur, a court may exercise an inherent discretion to resolve that issue, even though an event occurring during its pendency would normally render the matter moot.' [Citations.]" (*Californians for Fair Representation—No on 77 v. Superior Court* (2006) 138 Cal.App.4th 15, 22 [41 Cal.Rptr.3d 148].)

The unsuccessful recall election has made the Registrar's appeal from the judgment moot as to the issuance of a writ of mandate. (See *Mapstead v. Anchundo* (1998) 63 Cal.App.4th 246, 276–277 [73 Cal.Rptr.2d 602] [appeal from judgment directing registrar to verify certain signatures and certify referendum petition dismissed as moot as a result of intervening referendum election].) Reversing the judgment and instructing the trial court to enter a new judgment denying the request for a writ of mandate would have no practical effect. (Cf. *Mann v. Superior Court* (1986) 181 Cal.App.3d 372, 374–375 [226 Cal.Rptr. 263] [appellate court denied writ petition because election had been held and ordering trial court to vacate writ directing removal of withdrawing candidate's name would serve no purpose].)

The Registrar's appeal from the portion of the judgment providing declaratory relief is not moot, however, because the propriety of the trial court's ruling on the merits of the action determines whether Citizens was eligible for an award of attorney fees as the successful party. (Cf. *Save Our Residential Environment v. City of West Hollywood* (1992) 9 Cal.App.4th 1745, 1750–1751 [12 Cal.Rptr.2d 308] [appeal was not moot after city complied with writ, because judgment included award of attorney fees under Code Civ. Proc., § 1021.5 that depended on propriety of trial court's ruling on the merits]; *Mapstead v. Anchundo, supra,* 63 Cal.App.4th at pp. 277–279 [appeal from judgment issuing writ of mandate dismissed as moot after election had been held, but sufficiency of petition signatures reviewed in connection with appeal from attorney fees order].) Our review of the declaratory relief provided in this case will have the practical effect of determining the propriety of the fee award, and therefore, the issues are not moot.

Even were we to conclude that the appeal from the judgment is moot, the election law issues presented in this case are of broad importance and capable of recurring, and therefore, we would exercise our discretion to resolve the issues on the merits. (See *Kellam v. Eu* (1978) 83 Cal.App.3d 463, 466 [147 Cal.Rptr. 884] [exercising discretion to review issue of statutory interpretation concerning number of signatures required for independent candidate to qualify for ballot].)

*Standard of Review*

" 'Whether a determination is proper in an action for declaratory relief is a matter within the trial court's discretion . . . and the court's decision to grant or deny relief will not be disturbed on appeal unless it be clearly shown . . . that the discretion was abused.' [Citations.]" (*Application Group, Inc. v. Hunter Group, Inc.* (1998) 61 Cal.App.4th 881, 892–893 [72 Cal.Rptr.2d 73].) "However, we review questions of law independently. [Citation.] Where, as here, the facts are undisputed and the issue involves statutory interpretation, we exercise our independent judgment and review the matter de novo. [Citation.]" (*Alliance for a Better Downtown Millbrae v. Wade* (2003) 108 Cal.App.4th 123, 129 [133 Cal.Rptr.2d 249] [reviewing judgment on petition for writ of mandate under Code Civ. Proc., § 1085].)

■ "Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563] (*Coalition*).) Our first step is to "examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." (*Id.* at p. 737.)

"When the plain language of the statute does not resolve the interpretive question, we proceed to the second step of our inquiry. At this stage, we 'may turn to rules or maxims of construction "which serve as aids in the sense that they express familiar insights about conventional language usage." ' [Citations.] In addition, '[i]f the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy. [Citations.]' [Citation.]" (*Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 582–583 [48 Cal.Rptr.3d 340].)

■ "If the meaning of the statute remains unclear after examination of both the statute's plain language and its legislative history, then we proceed cautiously to the third and final step of the interpretive process. [Citation.] At this final stage of the process, we apply 'reason, practicality, and common sense to the language at hand.' [Citation.] The words of the statute should be interpreted 'to make them workable and reasonable.' [Citation.] We will also

consider the consequences that will flow from a particular statutory interpretation. [Citation.] 'In determining what the Legislature intended we are bound to consider not only the words used, but also other matters, "such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy and contemporaneous construction. [Citation.]" [Citation.]' [Citation.]" (*Ailanto Properties, Inc. v. City of Half Moon Bay, supra*, 142 Cal.App.4th at p. 583.)

*Withdrawal Requests Dated Prior to Signatures on Petition*

The Registrar contends that a voter's request to withdraw his or her signature from a recall petition is effective under sections 103 and 11303 even if the voter signed the request before signing the petition. Citizens argue that a voter cannot withdraw a signature on a petition before the signature is in existence. The Registrar's interpretation of the statute is correct.

Section 103 states: "Any voter who has signed an initiative, referendum or recall petition pursuant to the Constitution or laws of this state shall have his or her signature withdrawn from the petition upon filing a written request therefor with the appropriate county elections official or city elections official prior to the day the petition is filed."

Section 11303 similarly provides: "Any voter who has signed a recall petition shall have his or her signature withdrawn from the petition upon filing a written request therefor with the elections official prior to the day the petition section bearing the voter's signature is filed."

The only operative dates in sections 103 and 11303 are the date that the withdrawal request is filed and the date that the petition is filed. The only timing requirement under the plain language of the statute is that the withdrawal request must be filed prior to the date that the petition is filed. If a withdrawal request is filed prior to the filing of the recall petition, the voter's signature on the recall petition may not be counted. Neither statute states that the withdrawal request must be signed after the petition is signed. Whether the petition is signed before or after the withdrawal request is not a consideration under the plain language of the statute, as long as the request is filed prior to the date that the petition is filed.

Citizens' argument that a request to withdraw a signature from a recall petition should not be effective unless the petition was signed before the request has superficial appeal, but upon closer scrutiny this interpretation requires adding words to sections 103 and 11303 that do not exist and change the plain meaning of the statutes. There is no requirement in the statute that the petition be signed "prior to" the withdrawal request, or that the with-

drawal request be made "subsequent to" the petition signature. The Legislature easily could have required the signature on the recall petition prior to the withdrawal request. Section 11303, which pertains only to the withdrawal of signatures from recall petitions, was formerly section 27304, enacted in 1976. (Stats. 1976, ch. 1437, § 4, p. 6439.) That same year, the Legislature enacted section 5352, now section 9602, which pertains solely to the withdrawal of signatures from initiative and referendum petitions. (Stats. 1976, ch. 248, § 3, p. 488.) Section 9602 provides that a voter who has signed an initiative or referendum petition, "and who subsequently wishes his or her name withdrawn," may do so by filing a written request for the withdrawal with the appropriate elections official prior to the date the petition is filed. Although the Legislature could have inserted a similar timing requirement in section 103 or 11303, it has not done so.

Our interpretation is consistent with the Secretary of State's Guidelines for Verifying Election Petitions, of which the trial court took judicial notice in this case. The Secretary of State is charged with oversight of the elections process in California, and the guidelines have been cited with approval in *Hartman v. Kenyon* (1991) 227 Cal.App.3d 413, 419 [277 Cal.Rptr. 765] and *Mapstead v. Anchundo, supra,* 63 Cal.App.4th at page 263. The guidelines specifically address the issue of whether a withdrawal is effective that "is dated prior to the date the petition section is circulated containing the petition signature." The guidelines conclude that a withdrawal is effective under these circumstances, because there is no requirement in the statute that a statement of withdrawal contain a date.

█ "An agency interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts; however, unlike quasi-legislative regulations adopted by an agency to which the Legislature has confided the power to 'make law,' and which, if authorized by the enabling legislation, bind this and other courts as firmly as statutes themselves, the binding power of an agency's *interpretation* of a statute or regulation is contextual: Its power to persuade is both circumstantial and dependent on the presence or absence of factors that support the merit of the interpretation." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) "Courts must, in short, independently judge the text of the statute, taking into account and respecting the agency's interpretation of its meaning, of course, whether embodied in a formal rule or less formal representation. Where the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court. Depending on the context, it may be helpful, enlightening, even convincing. It may sometimes be of little worth. (See *Traverso v. People ex rel. Dept. of Transportation* (1996) 46 Cal.App.4th 1197, 1206 [54

Cal.Rptr.2d 434].) Considered alone and apart from the context and circumstances that produce them, agency interpretations are not binding or necessarily even authoritative. To quote the statement of the Law Revision Commission in a recent report, '[t]he standard for judicial review of agency interpretation of law is the *independent judgment* of the court, giving *deference* to the determination of the agency *appropriate* to the circumstances of the agency action.' (Judicial Review of Agency Action (Feb. 1997) 27 Cal. Law Revision Com. Rep. (1997) p. 81, italics added.)" (*Yamaha Corp. of America v. State Bd. of Equalization, supra*, 19 Cal.4th at pp. 7–8.)

In this instance, our independent review of the statutes leads us to conclude that the Secretary of State correctly determined that a withdrawal request signed prior to signing a recall petition is effective if filed with the appropriate election official before the recall petition is filed. The trial court erred in ruling that the withdrawal requests signed before the recall petition was signed were invalid.[3]

## *Declaration of a Circulator on the Withdrawal*

The trial court ruled that the withdrawals in this case were not valid because they were not supported by a declaration of a circulator pursuant to section 104. We conclude that a withdrawal request is not a "petition or paper" that requires the declaration of a circulator under section 104.

Section 104 provides as follows: "(a) Wherever any petition or paper is submitted to the elections official, each section of the petition or paper shall have attached to it a declaration signed by the circulator of the petition or paper, setting forth, in the circulator's own hand, the following: [¶] (1) The printed name of the circulator. [¶] (2) The residence address of the circulator, giving street and number, or if no street or number exists, adequate designation of residence so that the location may be readily ascertained. [¶] (3) The dates between which all the signatures to the petition or paper were obtained. [¶] (b) Each declaration submitted pursuant to this section shall also set forth the following: [¶] (1) That the circulator circulated that section and witnessed the appended signatures being written. [¶] (2) That according to the best information and belief of the circulator, each signature is the genuine signature of the person whose name it purports to be. [¶] (c) The circulator shall certify to the content of the declaration as to its truth and correctness,

---

[3] We note that section 9602 concerning initiatives and referenda has no application to the instant case. Therefore, we express no opinion as to whether section 9602 requires an initiative or referendum petition signature precede a signature withdrawal request under that section, nor do we express any opinion as to whether the Secretary of State's signature verification guidelines are correct as applied to withdrawal requests pursuant to section 9602.

under penalty of perjury under the laws of the State of California, with the signature of his or her name at length, including given name, middle name or initial, or initial and middle name. The circulator shall state the date and the place of execution on the declaration immediately preceding his or her signature."

It is undisputed that a withdrawal request is not a "petition" submitted to the elections official. The sole issue is whether a withdrawal request is a "paper" for which the Legislature intended to require a declaration of circulator. Read in the context of the statutory scheme, a "paper" requiring a declaration of circulator under section 104 does not include a withdrawal request. For example, section 100 sets forth requirements as to the form and content of "any initiative, referendum, recall, nominating petition or paper, or any other petition or paper" required to be signed by voters, and section 105 pertains to the verification of signatures on "any initiative, referendum, recall, nomination, or other election petition or paper." Section 106 explains that candidates and circulators can sign "nomination papers," and section 201 refers to a candidate's eligibility for office at the time "nomination papers" are issued. In contrast, neither section 103 nor section 11303 refer to a withdrawal request as a "petition" or a "paper," and none of the sections providing for petitions or papers refer to withdrawal requests. Moreover, it would be nonsensical to require a declaration of circulator be attached to requests that are filed by a voter and not subject to circulation. Therefore, we conclude that the trial court's interpretation of section 104 to require a declaration of circulator attached to requests for withdrawal of signatures is incorrect.

*Attorney Fees Award*

The trial court awarded attorney fees to Citizens as the successful party at trial, based on the court's determination that the withdrawal requests were invalid and the recall petition should have been certified as sufficient. Because we conclude the trial court's statutory interpretation was incorrect, the award of attorney fees to Citizens must be reversed.

Attorney fees under Code of Civil Procedure section 1021.5 are available "to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award

appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

Having determined that the trial court erred in granting judgment for Citizens in this action, Citizens is no longer a successful party in the litigation entitled to attorney fees. It is clear that the order awarding attorney fees must be reversed as to the Registrar. Although the Clerk did not appeal from the judgment or raise any issue concerning statutory interpretation on appeal, we conclude that the attorney fee award must be reversed as to the Clerk as well.

■ "As a general rule, where only one of several parties appeals from a judgment, the appeal includes only that portion of the judgment adverse to the appealing party's interest, and the judgment is considered final as to the nonappealing parties. [Citations.] That general rule has an important exception, however: '[W]here the part [of a judgment] appealed from is so interwoven and connected with the remainder, . . . that the appeal from a part of it . . . involves a consideration of the whole, . . . if a reversal is ordered it should extend to the entire judgment. The appellate court, in such cases, must have power to do that which justice requires and may extend its reversal as far as may be deemed necessary to accomplish that end.' [Citation.]" (*Estate of McDill* (1975) 14 Cal.3d 831, 840 [122 Cal.Rptr. 754, 537 P.2d 874] [ruling entire estate should have been distributed to two nieces and reversing judgment as to both, although only one appealed]; see *In re Marriage of Reese & Guy* (1999) 73 Cal.App.4th 1214, 1221–1222 [87 Cal.Rptr.2d 339] [reversing award of sanctions against lawyer and client, although only one appealed].)

In this case, the Clerk merely sought guidance from the trial court and took no position as to the proper interpretation of the statutory language at issue. Consistent with this neutral position, the Clerk did not appeal from the judgment and did not raise any contentions challenging the trial court's interpretation of the statutes on appeal from the order awarding attorney fees. Citizens contends in its respondent's brief that the Clerk has waived any issues on the merits, although we note that at oral argument, the parties agreed a reversal of the trial court's rulings on the merits would require reversal of the attorney fee award as to both the Registrar and the Clerk. We conclude that although the Clerk did not appeal from the judgment or raise any issue concerning statutory interpretation, the aspects of the judgment that affect the attorney fee order are so intertwined that we must reverse the order awarding attorney fees as to both the Registrar and the Clerk in the interests of justice.

## DISPOSITION

The judgment and the order awarding attorney fees against the Registrar and the Clerk are reversed. The Registrar and the Clerk are awarded their costs on appeal.

Turner, P. J., and Mosk, J., concurred.

A petition for a rehearing was denied November 2, 2009, and respondents' petition for review by the Supreme Court was denied January 13, 2010, S178181.