Filed 1/7/21

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHNNY KI LEE et al., | |
| Plaintiffs and Appellants, | G058631 |
| v. | (Super. Ct. No. 30-2019-01080056) |
| SEAN KOTYLUK, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Carmen R. Luege, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Reversed.

Niddrie Addams Fuller Singh, John S. Addams; Smith & Silbar and Rachelle Singer for Plaintiffs and Appellants.

Peirano & Associates, Inc., Cristian L. Peirano, Sean Raymond Bozarth and Tom N. Yacko for Defendant and Respondent.

\*  \*  \*

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.A, II.B, and II.C.3.

This case requires us to get into the weeds of the unlawful detainer statute. Plaintiffs Johnny Ki Lee and Un Joong Lee sought to evict a commercial tenant, defendant Sean Kotyluk, for selling marijuana without a license. They filed an unlawful detainer action against him based on Code of Civil Procedure section 1161, subdivision (3).[1] On the eve of trial, defendant filed a motion in limine requesting judgment on the pleadings. He claimed plaintiffs' three-day notice (the notice) was defective because it was served on June 4, 2019, but plaintiffs had not become owners of the property until June 20, 2019. In response, plaintiffs explained that the prior owner of the property, Rosemarie Haynes, had served the notice before transferring ownership of the property to them. The trial court granted judgment on the pleadings because the notice was issued prior to plaintiffs obtaining ownership of the property and because the notice failed to identify the party to whom defendant could return possession of the property. The court also denied plaintiffs leave to amend. Plaintiffs' appeal raises two questions of first impression, which we address in the published portion of this opinion.

First, can a property owner file an unlawful detainer action under section 1161, subdivision (3), based on a notice served by its predecessor in interest? We conclude the answer is yes. Nothing in the text of section 1161 prevents a successor owner from doing so. Nor does such a procedure undermine the purpose of the notice requirement in subdivision (3), which is primarily designed to give the tenant an opportunity to cure the breach and retain possession of the property.

Second, must a notice under section 1161, subdivision (3) identify the person to whom the tenant can turn over possession of the property if the tenant chooses to quit? We find this is not required by the statute. Based on our reading of this subdivision, it appears the Legislature purposefully chose not to include such a requirement. Subdivision (2) of section 1161 requires a notice to contain very detailed

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

instructions as to how a tenant can pay past due rent. In comparison, nothing in section 1161 requires a notice to contain any specific information as to how a tenant can restore possession of the property to the owner. This contrast suggests the Legislature purposely chose not to require that a notice contain such information. Given the cardinal rule that courts should not add provisions to a statute, we decline to read any such general requirement into section 1161, subdivision (3). (See *People v. Guzman* (2005) 35 Cal.4th 577, 587.)

Based on these conclusions, we find the trial court properly granted the motion seeking judgment on the pleadings because nothing in the complaint or its attachments indicated that Haynes, rather than plaintiffs, served the notice. But the court abused its discretion by denying plaintiffs leave to amend to add this allegation and thus we reverse the judgment.[2]

I

FACTS AND PROCEDURAL HISTORY

Plaintiffs filed a form unlawful detainer complaint against defendant on June 28, 2019, alleging they were the owners of certain commercial property in Lake Forest that defendant was unlawfully possessing. Defendant was allegedly using the property to sell unlicensed marijuana. Plaintiffs claimed this violated a section of the lease requiring the property to be used "**only** for the primary operation of a retail store selling Crystals & Gems, Candles, Incense & Oils, Greeting Cards, New & Used Books, and related items."

---

[2] The unpublished portion of this appeal denies defendant's motion to dismiss this appeal and motion to strike certain portions of the record but grants plaintiffs' motion to augment the record. It also addresses several arguments made by defendant concerning issues that were not raised below by either defendant or the trial court.

3

The complaint specified that defendant had entered into the subject lease with plaintiffs' predecessor in interest. A copy of the lease was attached to the complaint and identified defendant's landlord as the "Living Trust of Rosemarie S. Haynes." The complaint also alleged that defendant was served with the notice on June 4, 2019, and that it expired on June 7. The notice was signed by attorney Rachelle Singer as "Attorney for Landlord" and contained Singer's contact information. It did not specify the identity of the landlord. Nor did the complaint identify the specific party that had served the notice.

Defendant initially filed a demurrer to the complaint, which was overruled. He later filed a motion for summary judgment, which was denied. Then, a week before trial, defendant filed a "Motion in Limine Number 1 for Judgment on the Pleadings." The motion contended the notice was defective because plaintiffs did not own the property when it was served. Specifically, the notice had been served on June 4, 2019, and expired on June 7, but plaintiffs did not obtain ownership of the property until June 20, 2019.

Plaintiffs' opposition clarified that they had not served the notice. Rather, it had been served by the prior owner of the property, Haynes, on June 4, 2019. Haynes then sold the property to plaintiffs who recorded the grant deed on June 20, 2019, and then filed this unlawful detainer lawsuit on June 28, 2019. Plaintiffs maintained the notice was valid and that they could file an unlawful detainer action based upon it.

The motion was heard on October 8, 2019. Although the motion was styled as a motion in limine, the court exercised its discretion to hear it as a motion for judgment on the pleadings. At the start of oral argument, the trial court appeared unaware of plaintiffs' contention that Haynes had served the notice. In orally presenting its tentative ruling, the court framed the relevant issue as "whether a plaintiff who is not the owner of the property can issue or cause to be issued a three-day notice that expires – that also expires prior to them becoming the owners." It then tentatively concluded that "at the

4

time that the notice was issued, there was no landlord-tenant relationship between the plaintiff[s] and the defendant." Thus, the notice was invalid.

After hearing the tentative ruling, plaintiffs reiterated that Haynes, not plaintiffs, had served the notice. In response, the trial court stated that nothing in the complaint or the notice stated that Haynes had served it. Further, the court explained the proper procedure would have been for Haynes to file the lawsuit upon expiration of the notice and then amend her complaint after the sale to add plaintiffs as a party. The court also found the notice was defective because it did not identify the person to whom defendant could return possession of the property (which had not been raised by either party). Plaintiffs' request for leave to amend was denied, as the court found the defective notice could not be cured. The minute order issued after oral argument stated that "the notice [is] defective as it was issued prior to [plaintiffs] owning the subject premises. The notice also lacks any information as to whom to turn possession over to."

Judgment was entered in favor of defendant and against plaintiffs on October 16, 2019. The judgment erroneously stated that it had been made after trial and that the court had considered plaintiffs' testimony and evidence. Plaintiffs moved to set aside or vacate the judgment so that a correct judgment could be entered. That motion was granted, and the trial court entered an amended judgment on November 15, 2019, which the plaintiffs appealed. After they filed their notice of appeal, the trial court awarded defendant $25,794 in attorney fees and $1,445 in costs. Attorney fees were awarded under paragraph 31 of the lease, which allows the prevailing party to recover such fees. Costs were awarded to defendant as the prevailing party under section 1032.

5

II

DISCUSSION

A.    *Defendant's Motion to Dismiss*

Defendant contends the appeal is moot because possession of the property has already been restored to plaintiffs. Plaintiffs admit that defendant returned possession of the property but argue the appeal is not moot because, among other things, the propriety of defendant's fees and costs award depends on the correctness of the trial court's judgment. Plaintiffs have filed a separate appeal (G058768) challenging the trial court's award of $27,239 in attorney fees and costs. We agree with plaintiffs and deny defendant's motion to dismiss.[3]

"'Generally, an appeal will be dismissed as "moot" when, through no fault of respondent, the occurrence of an event renders it impossible for the appellate court to grant appellant any effective relief.'" (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 77-78.) "'A case is moot when the decision of the reviewing court "can have no practical impact or provide the parties effectual relief. [Citation.]" [Citation.] . . . . [Citation.]' [Citation.] An appeal will be decided, however, where part but not all of the controversy has been rendered moot." (*Id.* at p. 78.)

For example, an appeal is not moot where the appellate court's decision will determine whether the respondent was properly named the prevailing party for purposes of fees and costs. In *Indio Police Command Unit Assn. v. City of Indio* (2014) 230 Cal.App.4th 521, 526-527 (*Indio Police Command*), the City of Indio appealed a permanent injunction that prohibited it from implementing a plan to reorganize its police department. The injunction was dissolved after the appeal was filed, which, the City

---

[3] Defendant seeks judicial notice of a complaint and an amended complaint that plaintiffs filed in a subsequent unlawful detainer action against him (case No. 30-2019-01117156). Defendant's request for judicial notice is granted. (Evid. Code, § 452, subd. (d).) The amended complaint in that action alleges that defendant has vacated the property.

6

argued, rendered the appeal moot.  (*Id*. at pp. 533-534.)  This court disagreed:  "[W]e conclude the merits of the injunction must be addressed because 'the propriety of the trial court's ruling on the merits of the action determines whether [the respondent] was eligible for an award of attorney fees [under Code of Civil Procedure section 1021.5] as the successful party.  [Citations.]  Our review of the . . . relief provided in this case will have the practical effect of determining the propriety of the fee award, and therefore, the issues are not moot.'  [Citations.]  Here, the trial court awarded the [respondent] its attorney fees under Code of Civil Procedure section 1021.5 because it was the prevailing party, and thus the issue of whether it properly prevailed is relevant to the attorney fees order and we will consider it."  (*Id*. at p. 534; see *Carson Citizens for Reform v. Kawagoe* (2009) 178 Cal.App.4th 357, 365 [same] (*Kawagoe*); *Save Our Residential Environment v. City of West Hollywood* (1992) 9 Cal.App.4th 1745, 1750-1751 [same] (*Save Our Residential Environment*).)

Likewise, the trial court in this case awarded attorney fees and costs to defendant as the prevailing party under the terms of the lease and under section 1032, respectively.  Although defendant is no longer in possession of the property, our review of the trial court's judgment is relevant to determining the propriety of this award.  Accordingly, plaintiffs' appeal is not moot.

Defendant argues the three cases cited above – *Indio Police Command*, *Kawagoe*, and *Save Our Residential Environment* – are inapplicable because they all involved fees awarded under section 1021.5, which is not true here.[4]  While defendant is correct on the relevant facts, we disagree with his conclusion that these cases are inapposite.  In *Indio Police Command*, the specific source of the fee award did not drive the analysis.  Rather, the crucial factor was that the respondent had been awarded fees as

---

[4] Section 1021.5 allows a trial court to "award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if" certain elements are met.

7

the prevailing party. The propriety of the fee award was dependent on whether that determination was correct. As such, it was necessary to evaluate the merits of the underlying dispute. (*Indio Police Command*, *supra*, 230 Cal.App.4th at pp. 533-534.) The same is true of the analysis in *Kawagoe*, *supra*, 178 Cal.App.4th at page 365, and *Save Our Residential Environment*, *supra*, 9 Cal.App.4th at pages 1750-1751.

Next, defendant quotes a portion of *Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 134 (*Paul*), which states "it is settled that an appeal will not be retained solely to decide the question of liability for costs." But *Paul* was discussing *appellate* costs and is inapposite here.

*Paul* cites three cases for the above proposition, all of which explicitly address appellate costs. (*Paul*, *supra*, 62 Cal.2d at p. 134.) The first citation is *Turner v. Markham* (1909) 156 Cal. 68, 69-70, which states an appellate court "will not retain an appeal where its consideration and disposition upon the merits will not affect any substantial right of the parties. The mere fact that liability for *costs of appeal* may be involved does not affect this conclusion." (Italics added.) Second, *Paul* cites *Leroy v. Bella Vista Inv. Co.* (1963) 222 Cal.App.2d 369, 378, which specifies "the matter of the payment of the *costs of the appeal* does not serve as legal grounds of objection to the dismissal of [a moot] appeal." (Italics added.) Finally, it cites *Hake v. City of Bakersfield* (1942) 49 Cal.App.2d 174, 175, which provides "[t]he only thing argued at the hearing was with respect to the right of the respondents to recover their *costs on appeal* in the event of a dismissal. We know of no reason for a different rule, with respect to costs, where an appeal is dismissed because the questions raised have become moot than in a case where the appeal is dismissed for other reasons." (Italics added.)

Nowhere in *Paul* does it mention that an award of costs or fees by the trial court was at issue. Rather, the only mention of fees or costs in the entire opinion states "[t]he parties will bear their own costs on each appeal." (*Paul*, *supra*, 62 Cal.2d at p. 135.) Thus, it appears *Paul* was simply restating the rule on appellate costs set forth in

8

the three cases mentioned above. Further, interpreting *Paul* to cover attorney fees would call into question the holdings of *Indio Police Command*, *Kawagoe*, and *Save Our Residential Environment*. The better way to harmonize these cases is to read *Paul* as applying only to appellate court costs.

Both parties cite a footnote from *Cinnamon Square Shopping Center v. Meadowlark Enterprises* (1994) 24 Cal.App.4th 1837, 1843, footnote 2, in which this court interpreted *Paul* "as granting discretion to the appellate court to refuse to decide a moot case where the only remaining issue is [attorney fees and trial court costs]." In other words, *Cinnamon Square Shopping Center* suggests that *Paul* applies to attorney fees and trial court costs. But the footnote in *Cinnamon Square Shopping Center* is only dicta. The court had already determined the appeal was not moot for other reasons. (*Id.* at pp. 1842-1843.) After making this finding, the court briefly mentioned *Paul* in a footnote but did not conduct any analysis of its statement regarding costs. (*Id.* at pp. 1842-1843, fn. 2.)

B.      *Defendant's Motion to Strike and Plaintiffs' Motion to Augment*

Defendant also filed a motion to strike certain portions of plaintiffs' appendix. We deny this motion and defendant's related request for sanctions. (See Cal. Rules of Court, rule 8.124(g).)

The appellant "has the burden of providing an adequate record." (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.) An appellant's appendix must contain any item "that is necessary for proper consideration of the issues, including . . . any item that the appellant should reasonably assume the respondent will rely on." (Cal. Rules of Court, rule 8.124(b)(1)(B).) Generally, an appellant must err on the side of being overinclusive since "[f]ailure to provide an adequate record on an issue requires that the issue be resolved against" them. (*Hernandez*, at p. 502.) As sagely advised by Justice Wiseman, "[w]hen practicing

9

appellate law, there are at least three immutable rules:  first, take great care to prepare a complete record; second, if it is not in the record, it did not happen; and third, when in doubt, refer back to rules one and two." (*Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362, 364.)

Defendant asserts that certain portions of the appendix are irrelevant to our review and also present a biased account of the trial court proceedings.  This includes several minute orders and other documents filed in the trial court, as well as the hearing transcript for defendant's summary judgment motion.  Defendant suggests that since our review is limited to the face of the complaint, any document outside our scope of review is extraneous and was improperly included in the record.  We disagree.

Defendant did not bring a typical motion for judgment on the pleadings. Rather, on the verge of trial, he brought a motion in limine that sought judgment on the pleadings.  In recent years, courts have criticized the use of in limine motions to dispose of claims.  "A motion in limine is properly 'made to exclude evidence before the evidence is offered at trial, on grounds that would be sufficient to object to or move to strike the evidence.  The purpose of a motion in limine is "to avoid the obviously futile attempt to 'unring the bell' in the event a motion to strike is granted in the proceedings before the jury." [Citations.]' [Citations.] 'What in limine motions are *not* designed to do is to replace the dispositive motions prescribed by the Code of Civil Procedure.'" (*Johnson v. Chiu* (2011) 199 Cal.App.4th 775, 780–781.)  We recognize that courts have inherent authority to use in limine motions in this manner.  (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1595.)  They also have statutory authority to grant a motion for judgment on the pleadings sua sponte.  (§ 438, subd. (b)(2); *Jayasinghe v. Lee* (1993) 13 Cal.App.4th Supp. 33, 36.)  Still, as we have said in the past, we discourage this use of motions in limine.

Because of the timing of defendant's motion, the portions of the record to which defendant objects are generally relevant to showing the procedural history of this

10

case. While some documents are arguably unnecessary for our review, none of them are so blatantly irrelevant to merit striking them from the record. Further, the appendix is only 396 pages and left out many of the trial court documents. From this, it appears that plaintiffs attempted to be judicious in their selection of documents and took time to consider their relevance. To the extent defendant thought any document in the record distorted the proceedings below in a material way, he was free to file a motion to augment the record to correct any bias. (*King v. U.S. Bank National Assn.* (2020) 53 Cal.App.5th 675, 721.)

Plaintiffs also filed a motion to augment the record to include the sur-reply they filed in connection with defendant's motion seeking judgment on the pleadings. We grant this motion, as discussed in part C.3, *infra*. (Cal. Rules of Court, rule 8.155.)

## C. *Merits of the Motion*

"'A motion for judgment on the pleadings serves the function of a demurrer, challenging only defects on the face of the complaint.' [Citation.] As with a demurrer, '[t]he grounds for a motion for judgment on the pleadings must appear on the face of the complaint or from a matter of which the court may take judicial notice.'" (*Eckler v. Neutrogena Corp.* (2015) 238 Cal.App.4th 433, 439.) To withstand such a motion, "it is not enough that [plaintiffs] could assert a viable theory. 'A [motion for judgment on the pleadings] tests the legal sufficiency of factual allegations *in [the] complaint*.'" (*JPMorgan Chase Bank, N.A. v. Ward* (2019) 33 Cal.App.5th 678, 689.)

A trial court's decision on a motion for judgment on the pleadings is reviewed de novo. (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.) For the reasons below, we find the trial court properly granted the motion but erred by failing to allow plaintiffs leave to amend the complaint.

11

### 1. *Failure to identify the party to receive possession*

We first examine the trial court's finding that the notice was defective because it failed to identify the party to whom defendant could turn over possession of the property. We are unaware of any authority on this issue outside the text of the statute. Likewise, neither party was able to find any case law on this specific issue. After reviewing the statute, we find that a notice provided under section 1161, subdivision (3) need not contain this information.

"'Our role in interpreting statutes is to ascertain and effectuate the intended legislative purpose. [Citations.] We begin with the text, construing words in their broader statutory context and, where possible, harmonizing provisions concerning the same subject.'" (*Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474, 478 (*Dr. Leevil*).) In doing so, we give "'the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose [citation].'" (*Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135.) Our inquiry ends "'[i]f this contextual reading of the statute's language reveals no ambiguity . . . .'" (*Dr. Leevil*, at p. 478.)

"The unlawful detainer action was created to provide property owners who sought to recover possession of their property with a relatively inexpensive and quick legal remedy, thus discouraging property owners from resorting to self-help methods." (*Dr. Leevil*, *supra*, 6 Cal.5th at pp. 480-481.) At the time the notice was served, section 1161, subdivision (3) declared that "[a] tenant of real property . . . is guilty of unlawful detainer" when they "continue[] in possession . . . after a neglect or failure to perform other conditions or covenants of the lease or agreement under which the property is held . . . than the one for the payment of rent, and three days' notice, in writing, requiring the performance of such conditions or covenants, or the possession of the property, shall have been served upon him or her . . . . Within three days after the service of the notice,

12

the tenant . . . may perform the conditions or covenants of the lease . . . and thereby save the lease from forfeiture . . . ." (Former § 1161, subd. (3).)[5]

Aside from subdivision (3), two other subdivisions in section 1161 require three days' notice to the tenant prior to filing an unlawful detainer action: subdivisions (2) and (4). Subdivision (2) relates to defaults in rent and subdivision (4) relates to subletting, waste, nuisance, or unlawful use of the property. Notably, subdivisions (3) and (4) do not list the required contents of the notice with much specificity. Subdivision (3) simply states the notice must be "in writing" and "requir[e] the performance of [the breached] conditions or covenants, or the possession of the property." (§ 1161, subd. (3).) And subdivision (4) states the landlord "shall upon service of three days' notice to quit upon the person or persons in possession, be entitled to restitution of possession of the demised premises . . . ." (§ 1161, subd. (4).)

Similarly, a notice provided under section 1161, subdivision (2) must be "in writing" and state that plaintiff can either relinquish possession of the property or remit the unpaid rent. Like subdivisions (3) and (4), there are no specific notice requirements relating to the return of possession of the property. But, with regard to the rent owed, a notice under subdivision (2) must include "the amount which is due, the name, telephone number, and address of the person to whom the rent payment shall be made, and, if payment may be made personally, the usual days and hours that person will be available to receive the payment . . . or the number of an account in a financial institution into which the rental payment may be made, and the name and street address of the institution (provided that the institution is located within five miles of the rental property), or if an

_____

[5] Hereinafter, when referring to section 1161, subdivision (3), it will be to the former statute that was current when the notice was served. The statute was subsequently amended to clarify that the notice period excludes weekends and judicial holidays. (Stats. 2018, ch. 260, § 1, eff. Jan. 1, 2019.)

13

electronic funds transfer procedure has been previously established, that payment may be made pursuant to that procedure . . . ." (§ 1161, subd. (2).)

Given the detailed requirements for payment instructions in section 1161, subdivision (2), the lack of specific notice requirements concerning return of the property to the owner in subdivisions (2), (3), and (4) is noteworthy. Rather, these subdivisions only require the notice to demand "possession of the property" (§ 1161, subds. (2) & (3)) or "possession of the demised premises" (§ 1161, subd. (4)). Had the Legislature sought to require more detailed instructions in the notice on how to restore possession of the property to the owner, the particularized requirements in subdivision (2) shows it knew how to do so. As such, the absence of any such requirements in the notice appears to be intentional. "When language is included in one portion of a statute, its omission from a different portion addressing a similar subject suggests that the omission was purposeful." (*In re Ethan C.* (2012) 54 Cal.4th 610, 638; *People v. Arriaga* (2014) 58 Cal.4th 950, 960 ["It is a settled principle of statutory interpretation that if a statute contains a provision regarding one subject, that provision's omission in the same or another statute regarding a related subject is evidence of a different legislative intent"].)

Indeed, case law has suggested the notice requirements for section 1161, subdivision (3) are minimal: "Where . . . the plaintiff claims the defendant breached covenants in the lease, the complaint must allege compliance with the notice requirements of Code of Civil Procedure, section 1161(3). [Citation.] At minimum this requires allegations that the defendant was served with a written notice, [citation], specifying the alleged breach, [citation] and unequivocally demanding possession within three days of service of the notice. [Citation.] Where the condition or covenant allegedly violated is capable of being performed, the notice must give the tenant the alternative of performing or quitting possession." (*Delta Imports, Inc v. Municipal Court* (1983) 146 Cal.App.3d 1033, 1036 (*Delta Imports*).) Likewise, in an action brought under subdivisions (3) and (4) of section 1161, another court has stated that "[w]hat is a

14

sufficient notice to quit or demand for possession is stated in the several text-books on the law of landlord and tenant, and the authors do not seem to differ materially as to what the notice should contain. No particular words are prescribed, and no special form is indispensable. Doubtless any written demand is sufficient if the person to whom it is given, as a person of common understanding, must understand from it that the landlord is absolutely and unconditionally demanding of him possession of the demised premises." (*Horton-Howard v. Payton* (1919) 44 Cal.App. 108, 112.)[6]

Moreover, the purpose behind a three-day notice is not subverted if the notice fails to identify the party to whom possession should be returned. The notice's purpose is to inform the tenant of the breach so the tenant can rationally choose whether to cure the breach and retain possession, quit the property, or contest the allegations. (See *Delta Imports*, *supra*, 146 Cal.App.3d at p. 1036.) The primary concern being providing the tenant with the opportunity to cure and retain possession. (See *Fifth & Broadway Partnership v. Kimny, Inc.* (1980) 102 Cal.App.3d 195, 202.) Specific instructions identifying the person to receive possession of the property may be helpful, but they are inessential to the overall purpose.

Section 1161, subdivision (2) presumably requires a notice to provide clear payment instructions so the tenant can easily and timely remit the unpaid rent and avoid an unwanted forfeiture. (See *Valov v. Tank* (1985) 168 Cal.App.3d 867, 874.) Besides, when dealing with a default in rent, there is a plausible risk that an unscrupulous landlord could purposely misstate the amount of unpaid rent or avoid payment in order to unfairly seize possession of the property from the tenant. Within this context, detailed notice requirements make sense since "'forfeitures of leases are not favored by the law.'" (*Rowe v. Wells Fargo Realty Services, Inc.* (1985) 166 Cal.App.3d 310, 318.) These

---

[6] Section 1161, subdivision (3) existed in largely the same form when *Horton-Howard v. Payton*, *supra*, 44 Cal.App. 108, was decided. (See, e.g., *Schnittger v. Rose* (1903) 139 Cal. 656, 660 [quoting statute].)

15

concerns do not exist when a tenant voluntarily forfeits the lease by choosing to return possession of the property to the owner. Accordingly, the Legislature may have determined that detailed instructions concerning the return of possession in a three-day notice were not needed.

Whatever its reasons for doing so, the Legislature did not mandate that a notice under subdivisions (2), (3), or (4) of section 1161 identify the party to whom a tenant should surrender possession of the property. Courts should refrain from "'insert[ing]' additional language into a statute [because it] 'violate[s] the cardinal rule of statutory construction that courts must not add provisions to statutes.'" (*People v. Guzman*, *supra*, 35 Cal.4th at p. 587.) "Although we may partially rewrite a statute 'when compelled by necessity and supported by firm evidence of the drafters' true intent [citation], we should not do so when the statute is reasonably susceptible to an interpretation that harmonizes all its parts without disregarding or altering any of them.'" (*Id*. at p. 587.) For reasons set forth above, "[w]e follow this restrained approach to conform to the 'necessary limitations on our proper role in statutory interpretation.'" (*Ibid*.)

Defendant argues there are practical reasons to identify the party to whom possession should be returned. He contends that if he had "delivered possession of the property to Haynes" after plaintiffs obtained ownership on June 20, 2019, then he "would **still** be guilty of Unlawful Detainer because he would have effectively put a subtenant (Haynes) into possession of the property." But defendant never attempted to return possession of the property to Haynes, and we find no reason to address this unlikely hypothetical scenario. Further, even if such a requirement could be read into the section 1161, subdivision (3), the notice satisfied it. It was signed by Singer as "Attorney for Landlord," and included her phone number and address. Had defendant sought to return possession of the property, he could have contacted Singer to initiate the process.

16

## 2. *Notice issued prior to plaintiffs' ownership*

The trial court also found "the notice [was] defective as it was issued prior to [plaintiffs] owning the subject premises." We agree with the trial court that the complaint does not set forth a viable unlawful detainer claim. Plaintiffs obtained ownership of the property on June 20, 2019, when they closed escrow and recorded the grant deed.[7] The notice was served on June 4, 2019. Plaintiffs could not serve a valid notice on June 4, because they did not own the property at that time and were strangers to the lease. (See *Kassan v. Stout* (1973) 9 Cal.3d 39, 44; *Bawa v. Terhune* (2019) 33 Cal.App.5th Supp. 1, 5; cf. *Dr. Leevil, supra*, 6 Cal.5th at pp. 482-484.) While they contend the notice was served by Haynes, their predecessor in interest, nothing in the complaint or the notice indicates it was served by Haynes. Rather, the notice is signed by Singer as "Attorney for Landlord." As such, the complaint does not show that a valid notice was served on defendant. (*JPMorgan Chase Bank, N.A. v. Ward, supra*, 33 Cal.App.5th at p. 689.)

Though it correctly granted the motion, the trial court erred by refusing to allow plaintiffs leave to amend. Plaintiffs could have cured the above defect by amending the complaint to state that Haynes had served the notice. "If there is a reasonable possibility the defect in the pleading can be cured by amendment, denial of leave to amend is an abuse of discretion." (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 209.)

Nothing in the complaint, the notice, or the record contradicts plaintiffs' assertion that Haynes served the notice. Adding such an allegation to the complaint

---

[7] The parties stipulated to these facts at the hearing.

17

would not invoke the sham pleading doctrine.[8] (*Tindell v. Murphy* (2018) 22 Cal.App.5th 1239, 1248.) Defendant argues that the complaint identified Singer as the attorney for plaintiffs and it should be inferred that "Attorney for Landlord" on the notice means attorney for plaintiffs. We are not persuaded. As Singer stated during oral argument at the trial court, she was previously the attorney for Haynes and then began representing plaintiffs. Thus, she could serve the notice on behalf of Haynes and then file the lawsuit on behalf of plaintiffs.

Moreover, we find that plaintiffs were entitled to base their unlawful detainer action against defendant on the notice served by Haynes. Generally, section 1161, subdivision (3) "provides that a tenant is guilty of unlawful detainer if he fails to perform the conditions of the lease after receipt of three days' notice from the landlord requiring such performance." (*Kassan v. Stout*, *supra*, 9 Cal.3d at p. 44.) Service of a notice is a prerequisite to filing an unlawful detainer action. If the breach is not cured within the notice period, the landlord may file an unlawful detainer lawsuit. (*Hsieh v. Pederson* (2018) 23 Cal.App.5th Supp. 1, 7.) And "[t]he right to maintain an action by 'the successor in estate of [the] landlord' is expressly conferred by section 1161 of the Code of Civil Procedure." (*Plummer v. Agoure* (1912) 20 Cal.App. 319, 321 (*Plummer*).)

Since Haynes purportedly served the notice on June 4, 2019, she would have been entitled to file an unlawful detainer lawsuit against defendant on June 7, when the notice expired. (*Hsieh v. Pederson*, *supra*, 23 Cal.App.5th Supp. at p. 7.) She did not

---

[8] Plaintiffs' contention is consistent with their past arguments. In their opposition to defendant's motion for summary judgment, plaintiffs submitted a declaration from Haynes stating that she caused the notice to be served on defendant. Given the standard of review, we do not consider the substance of this declaration in our analysis. We mention it only to note this consistency.

18

do so. Rather, she transferred ownership of the property to plaintiffs on June 20, 2019, and plaintiffs filed this lawsuit eight days later based on Haynes' notice.

Plaintiffs, as Haynes' successors in interest, could rely on her notice and file an unlawful detainer action against defendant after perfecting title. Nothing in section 1161, subdivision (3) prevents a new owner from relying on a notice served by its predecessor in interest. Rather, it states a tenant "is guilty of unlawful detainer" if the tenant fails to cure the breach or quit the property within the notice period. (§ 1161, subd. (3).) Defendant failed to do either by June 7, 2019, so he was already "guilty of unlawful detainer" by the time plaintiffs acquired the property on June 20, 2019. At that point, defendant had already been given the opportunity to cure the breach and retain possession of the property but had failed to do so. It is logical that plaintiffs would be entitled to immediately file an unlawful detainer proceeding to recover possession of their property without serving a new notice. (See *Plummer*, *supra*, 20 Cal.App. at p. 321.) There was no need to serve a new notice on defendant to make him "guilty of unlawful detainer" again. And we are aware of no authority suggesting that a tenant's unlawful possession of the property somehow resets if a new party subsequently takes ownership of the property.

Such an interpretation of the statute does not subvert the purpose of the notice requirement, which, as set forth above, is primarily designed to give the tenant an opportunity to cure the breach and retain possession of the property. (See *Delta Imports*, *supra*, 146 Cal.App.3d at p. 1036; *Fifth & Broadway Partnership v. Kimny, Inc.*, *supra*, 102 Cal.App.3d at p. 202.) This concern is served regardless of whether Haynes or plaintiffs served the notice. Under either scenario, defendant was on notice that the unlicensed selling of marijuana on the property was a breach of the lease and that he needed to stop such activity to avoid forfeiture. He did not and forfeited his right to remain in possession of the property. Nor does it seem reasonable to require plaintiffs to provide another notice and give defendant another opportunity to cure the breach or quit

19

the property. Instituting such a requirement would result in an undeserved windfall for defendant.

Further, Civil Code section 821 states that "[a] person to whom any real property is transferred or devised, upon which rent has been reserved, or to whom any such rent is transferred, is entitled to the same remedies for recovery of rent, for non-performance of any of the terms of the lease, or for any waste or cause of forfeiture, as his grantor or devisor might have had." As discussed above, Haynes was entitled to file an unlawful detainer lawsuit against defendant on June 7, when the notice expired. (*Hsieh v. Pederson*, *supra*, 23 Cal.App.5th Supp. at p. 7.) Instead, she transferred ownership of the property and the right to receive rent to plaintiffs, who filed suit. Specifically, the complaint alleged Haynes right to receive rent was transferred to plaintiffs, including $7,354.40 in past due rent and "[f]uture rent per [the] terms of [the] Lease." Given this transfer, plaintiffs were entitled to the same remedies as Haynes for defendant's breach of the lease. (Civ. Code, § 821.) This presumably includes Haynes' remedy of unlawful detainer that ripened after the notice expired on June 7.

Finally, the trial court thought the proper procedure was for Haynes to file the lawsuit after the notice expired and then amend the complaint after the sale to add plaintiffs as parties. We are aware of no authority stating that this proposed procedure is improper. And the procedure suggested by the trial court is similar to what occurred here. In both scenarios, the successor owner is relying on the notice given by the prior owner. Any challenges that a tenant might have to the new owner would exist regardless of whether the new owner was substituted in as a plaintiff or had initiated the action themselves after perfecting title.

In response, defendant argues a successor in estate generally does not have standing under section 1161, subdivision (3) to file an unlawful detainer action. His argument is based on *Reay v. Cotter* (1865) 29 Cal. 168 (*Reay*), a case published over 150 years ago. In *Reay*, the plaintiff purchased real property and was assigned the

defendant's lease. The plaintiff filed an unlawful detainer action and the defendant moved to dismiss the case on grounds he had not attorned to the plaintiff. (*Id*. at pp. 169-170.) The court found that under the relevant statute, unlawful detainer was "conferred only upon 'the landlord,'" and was not available to a landlord's successors in estate. (*Id*. at p. 170.) It affirmed the trial court's dismissal since the defendant had not attorned to the plaintiff, so the parties were not in a conventional landlord-tenant relationship and the plaintiff was a "stranger to the lease." (*Id*. at pp. 170-171.)

The unlawful detainer "statute was subsequently amended to provide . . . that the action might be maintained by the landlord 'or the successor in estate of his landlord.' Under this amendment the courts [have] found no difficulty in holding that the landlord's successor in estate could maintain the action, although the conventional relation of landlord and tenant did not exist between the tenant and the landlord's successor." (*Hewitt v. Justice's Court of Brooklyn Township* (1933) 131 Cal.App. 439, 442.) Further, Civil Code section 1111 was enacted a few years after *Reay* and states that "[g]rants of rents or of reversions or of remainders are good and effectual without attornments of the tenants . . . ." Under this statute, the "attornment of the tenant [is not] necessary to enable plaintiffs as vendees of the leased lands to maintain [an unlawful detainer] action." (*Plummer*, *supra*, 20 Cal.App. at p. 321.)

Despite this authority, defendant contends that *Reay* is still applicable to section 1161, subdivision (3). He points out that subdivisions (1), (2), (4), and (5) of section 1161 all expressly contain the phrase "successor in estate" while subdivision (3) does not. He asserts the Legislature intentionally omitted "successor in estate" from subdivision (3), and, consequently, *Reay* is still applicable to it. Since plaintiffs are not his "conventional landlord[s]," he maintains that they cannot bring an unlawful detainer action against him under subdivision (3). (Citing *Reay*, *supra*, 29 Cal. at pp. 170-171.)

It is true that subdivision (3) is the only subdivision in section 1161 that does not contain the phrase "successor in interest." But, notably, subdivision (3) is also

21

the only subdivision in section 1161 that does not contain the word "landlord." Subdivisions (1) and (2) allow an unlawful detainer action if a tenant continues in possession "without the permission of [their] landlord, or the successor in estate of [their] landlord" after their term expires or they default on their rent. (§ 1161, subds. (1) & (2).) Subdivision (4) states "the landlord, or his or her successor in estate, shall" be entitled to restitution of the property upon three days' notice if the tenant sublets or commits waste in breach of the lease, permits a nuisance to occur on the property, or uses the property in an unlawful manner. (§ 1161, subd. (4).) Finally, subdivision (5) applies when a tenant gives notice of their intention to vacate the property but fails to timely deliver the possession of the property "without the permission of his or her landlord, or the successor in estate of the landlord . . . ." (§ 1161, subd. (5).)

In contrast, section 1161, subdivision (3) states an unlawful detainer action lies when the tenant "continues in possession . . . after a neglect or failure to perform other conditions or covenants of the lease or agreement under which the property is held . . . and three days' notice, in writing, requiring the performance of such conditions or covenants, or the possession of the property, shall have been served upon him or her . . . ." While there are no references to "landlord" in section 1161, subdivision (3), it must be read into the section. Otherwise, the subdivision could be enforced by a person with no connection to the lease or the property. This is obviously untrue. (See *Reay*, *supra*, 29 Cal. at p. 170.)

Section 1161, subdivision (3) "'must, of course, be read in the context of the provision as a whole' [citation] and in the context of the statutory scheme as a whole." (*United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1090.) From reviewing section 1161 as a whole, it appears that when the Legislature amended the statute to include successors in estate, it did so by adding the phrase "successor in estate" next to the term "landlord." Since subdivision (3) did not

22

contain the term "landlord," the "successor in estate" language was not added to it.[9] But that does not mean that subdivision (3) cannot be enforced by a successor in estate. Much like "landlord" must be read into section 1161, subdivision (3), so must "successor in estate" given that it is attached to the term "landlord" throughout section 1161. Since nothing in section 1161 indicates that subdivision (3) should be treated differently than the other subdivisions as to successor owners, this is the most reasonable reading of section 1161 as a whole. This reading is reinforced by case law, which states that section 1161 was generally amended after *Reay* to allow for unlawful detainer actions to be maintained by a landlord's successor in estate. (See, e.g., *Hewitt v. Justice's Court of Brooklyn Township*, *supra*, 131 Cal.App. at p. 442; *Plummer*, *supra*, 20 Cal.App. at p. 321.) The enactment of Civil Code section 1111 provides further support, as it shows a general intent by the Legislature to grant more rights to successor owners following *Reay*.

With regard to Civil Code section 821, defendant claims the expiration of the notice on June 7, 2019, terminated the lease, which ended the landlord-tenant relationship between Haynes and defendant. Thus, he maintains that Haynes could not assign a landlord-tenant relationship to plaintiffs, rendering Civil Code section 821 ineffective. We need not address this argument since we find that section 1161, subdivision (3) can be enforced by a landlord's successor in estate. As such, it is unnecessary for us to apply Civil Code section 821.

However, we note that Civil Code section 821 does not specifically require a landlord-tenant relationship. Instead, it applies to a transferee "upon which rent has been reserved, or to whom any such rent is transferred." (Civ. Code, § 821.)

---

[9] Section 1161 was amended sometime prior to 1883. (See, e.g., *Martel v. Meehan* (1883) 63 Cal. 47, 49-50 [noting amendment of section 1161].) At the time of the amendment, the language of section 1161, subdivision (3) was substantially similar to the statute in effect when the notice was served. (See, e.g., § 1161, subd. (3); *Opera House & Art Bldg. Asso. v. Bert* (1877) 52 Cal. 471, 472 [quoting statute]; *Schnittger v. Rose*, *supra*, 139 Cal. at pp. 660 [same].)

Defendant's rent obligations to Haynes and plaintiffs continued after June 7. (*Walt v. Superior Court* (1992) 8 Cal.App.4th 1667, 1677-1678; cf. 12 Witkin, Summary of Cal. Law (11th ed. 2020) Real Property, § 753, p. 848.) The complaint alleged that defendant owed plaintiffs past due and future rent under the lease. Since defendant's rent obligation was still intact, Civil Code section 821 applied and plaintiffs were entitled to any remedies that were available to Haynes, including unlawful detainer.

Similarly, defendant argues that no case has found that Civil Code section 821 alone confers the remedy of unlawful detainer. Instead, he argues that all cases that have allowed a landlord's successor in estate to file an unlawful detainer action have relied on the "successor in estate" clauses within section 1161. Yet other cases have identified Civil Code section 821 as another ground for allowing a landlord's successor in estate to file an unlawful detainer action. For example, in *Plummer* the defendant contested an unlawful detainer action on grounds that only "the original lessors named in the lease could give the notice or maintain the action." (*Plummer*, *supra*, 20 Cal.App. at p. 321.) *Plummer* rejected this argument under both section 1161 and Civil Code section 821: "The right to maintain an action by 'the successor in estate of his landlord' is expressly conferred by section 1161 of the Code of Civil Procedure. Moreover, section 821 of the Civil Code provides: 'A person to whom any real property is transferred or devised, upon which rent has been reserved, or to whom any such rent is transferred, is entitled to the same remedies for recovery of rent, for nonperformance of any of the terms of the lease, or for any waste or cause of forfeiture, as his grantor or devisor might have had.'" (*Plummer*, at p. 321.)[10]

Defendant also suggests that allowing successor owners to file an unlawful detainer action based on the notice of their predecessor could create confusion for tenants. He provides a hypothetical scenario in which a predecessor owner issues a

_____

[10] Civil Code section 821 was enacted in 1872, seven years after *Reay* was published. Thus, this statute did not factor into the Supreme Court's analysis in *Reay*.

notice to perform or quit based on the nonpayment of a late fee and then transfers the property to a successor owner. In such a scenario, he contends, the tenant will be unsure of whether to remit the outstanding late fee to the predecessor or successor owner. Again, we choose not to address this hypothetical. It would require us to speculate as to the specific contents of a hypothetical notice. It is enough to say that, assuming the hypothetical notice was truly ambiguous as to how the tenant could cure the breach, such a notice would be defective and could not serve as the basis of an unlawful detainer action. (See *Bevill v. Zoura* (1994) 27 Cal.App.4th 694, 698; Friedman et al., Cal. Prac. Guide: Landlord-Tenant (The Rutter Group 2020) ¶ 7:146, p. 7-96.)

The notice here contained no such ambiguity. It stated that to cure the violation, defendant needed to stop "using the premises for the unlicensed selling of marijuana," and he needed to conform his use of the property with paragraph J of the lease, which set forth the items that he could sell. Defendant had three days from the date of Haynes' notice to correct this violation or vacate the property. He did neither. As such, by the time plaintiffs obtained ownership of the property, defendant was already "guilty of unlawful detainer" under section 1161, subdivision (3). And while defendant argues that a new owner may want to keep a tenant that had been served with a notice by the prior owner, this opinion does not prevent a new owner from doing so. Had plaintiffs wanted to retain defendant as a tenant, the parties could have agreed to reinstate the lease, entered into a new lease, or reached some other agreement.

Finally, we do not address defendant's arguments that plaintiffs could not serve the notice prior to obtaining ownership of the property. The complaint does not allege that plaintiffs served the notice, nothing in the record shows that plaintiffs ever claimed to have served the notice, and plaintiffs asserted at the hearing that Haynes served the notice. Thus, as set forth above, plaintiffs should have been granted leave to amend the complaint.

25

### 3. *Other Arguments*

Defendant claims that plaintiffs' failure to include in the record their sur-reply to the motion, which was considered by the trial court, means that we must "presume support for the judgment would be found in the missing documents.  In particular, a statement or admission by [plaintiffs] that leave to amend would not be fruitful."  In response, plaintiffs filed a motion to augment the record with the sur-reply.  Despite raising the sur-reply as an issue, defendant opposed plaintiffs' motion to augment.  We grant the motion to augment, as stated above, to evaluate defendant's argument.  Nothing in the sur-reply adds support for the judgment.  Plaintiffs only respond to various arguments that defendant made in his reply brief.  There is certainly no express or implied admission by plaintiffs that leave to amend would be futile.

Finally, defendant argues the court's judgment should be affirmed because the unlawful detainer claim is barred under the doctrine of laches or because plaintiffs waived, changed, or cancelled the notice.  Defendant did not raise these arguments below, and "[a]ppellate courts will generally not consider new theories raised for the first time on appeal. [Citation.]  Exceptions exist, however, in cases where a new point of law is decided after the trial court proceedings [citation] or where the new theory 'presents a question of law to be applied to undisputed facts in the record.'"  (*RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1518.)

As to the laches argument, defendant contends that after the notice expired on June 7, 2019, plaintiffs unreasonably delayed by filing the unlawful detainer complaint on June 28, 2019.  However, laches is not a defense to an unlawful detainer action.  (*Northridge Hospital Foundation v. Pic 'N' Save No. 9, Inc.* (1986) 187 Cal.App.3d 1088, 1101.)  And even if it were, given the facts in this case, filing an unlawful detainer action 21 days after the expiration of the notice does not constitute an unreasonable delay.  (*In re Marriage of Parker* (2017) 14 Cal.App.5th 681, 688 [stating elements for laches].)

26

We decline to consider defendant's argument that the notice was waived, changed, or cancelled. Defendant's argument is based on notices to quit that plaintiffs allegedly served on November 11 and 25, 2019, which were based on the same conduct as the notice at issue. Defendant contends these November 2019 notices waived, changed, or cancelled the notice. But the court granted the motion for judgment on the pleadings in October 2019, before these subsequent notices were served. Thus, they did not factor into the trial court's decision to grant the motion and award attorney fees and costs. Besides, had the trial court granted leave to amend, these subsequent notices would have been unnecessary.

III

DISPOSITION

The trial court's judgment is reversed. Plaintiffs are entitled to their costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


ARONSON, J.


GOETHALS, J.

27